UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES E. SPAULDING and JOANN C. SPAULDING, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 16-30173-MGM |
| CITIFINANCIAL SERVICING, LLC, et al., Defendants. | ) ) ) ) | |

### MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION TO FURTHER AMEND THE VERIFIED COMPLAINT
(Dkt. No. 61)

ROBERTSON, M.J.

I. INTRODUCTION

This matter is before the court on the motion by plaintiffs James E. Spaulding and Joann Spaulding ("Plaintiffs") for leave to further amend their verified complaint ("Plaintiff's Motion"). Citifinancial Servicing, LLC, the sole remaining defendant ("Defendant"), opposes the motion. The court heard argument from the parties on March 9, 2018, and, for the reasons set forth below, DENIES on the ground of futility Plaintiff's Motion for leave to further amend their verified complaint.

II. BACKGROUND

Plaintiffs filed their initial complaint in the Berkshire County Superior Court on September 19, 2016. They amended the complaint to add additional claims on October 3, 2016 (Dkt. No. 1-2). The defendants removed the case to this court (Dkt. No. 1). The factual allegations on which Plaintiffs based their claims did not change when they initially amended their complaint, nor have those allegations changed with respect to instant motion. In summary, Plaintiffs allege that they are the owners of land in Egremont which was historically shown on a

1

plan as two lots, which Plaintiffs refer to as Lot 1 and Lot 2. The parents of plaintiff Joann Spaulding acquired both lots, Lot 1 in 1952 and Lot 2 in 1973, from different sellers and conveyed a one-half undivided interest in each lot to Plaintiffs in 1982. In April 2002, Josephine Curtiss, plaintiff Joann Spaulding's mother, granted a mortgage to Citifinancial Services, Inc. secured by Lots 1 and 2, less and excepting the property interest conveyed to Plaintiffs. This mortgage was subsequently discharged. On February 14, 2003, Ms. Curtiss granted a second mortgage to Citifinancial Services, Inc ("Second Mortgage"). The metes and bounds description of the property securing the Second Mortgage corresponded to Lot 2 only. Lot 2 is landlocked and unbuildable and is subject to Plaintiffs' one-half undivided interest. Ms. Curtiss was discharged in bankruptcy on April 11, 2005. On March 6, 2009, Ms. Curtiss conveyed her remaining one-half interest in Lots 1 and 2 to Plaintiffs. Ms. Curtiss died in 2010 (Dkt. 1-1 at 9-10, ¶¶ 4-14). Plaintiffs' residence is on Lot 1, which, according to the metes and bounds description, is not subject to the Second Mortgage (*id.* at 11, ¶¶ 17, 23).

Without specificity as to dates or amounts, Plaintiffs allege that they "continued to make monthly payments on the [Second] [M]ortgage" (*id.* at 10, ¶ 15).[1] They further allege that beginning in July 2015, Defendant cashed the checks Plaintiffs were sending to pay off the Second Mortgage but failed to credit the payments to the mortgage account. On October 22, 2015, Defendant conducted an appraisal of Plaintiff's residence. In November 2015, Defendant ceased sending monthly mortgage statements and Plaintiffs ceased making payments on the Second Mortgage. On May 13, 2016, Defendant sent a notice of default addressed to Ms. Curtiss and, on August 5, 2016, Defendant sent a "threat of foreclosure" addressed to Ms. Curtiss.

---

[1] It may fairly be inferred that Defendant was sending notices about the Second Mortgage account addressed to Ms. Curtiss, not to Plaintiffs.

Defendant, Plaintiffs allege, was unresponsive when, through counsel and on multiple occasions, they sought to communicate with the point of contact identified in the threat of foreclosure document (*id.* at 11-12, ¶¶ 16-22). On September 8, 2016, Plaintiffs returned home to find that Mortgage Contracting Services ("MCS") had posted a notice on their home stating that MCS was taking steps to secure the property (*id.* at 12, ¶ 23).

Plaintiff's complaint, as amended, seeks a declaratory judgment (Count I); injunctive relief (Count II); and a permanent injunction (Count III); and asserts claims for trespass (Count IV); infliction of emotional distress (Count V); slander of title (Count VI) (*id.* at 12-16, ¶¶ 24-33); unfair and deceptive trade practices (Count VIII); unfair debt collection practices in violation of federal law (Count IX); and unfair debt collection practices in violation of state law (Count X) (Dkt. No. 1-2 at 2-3, at ¶¶ 34-41).[2] Plaintiffs' proposed second amendment to their verified complaint would add claims that Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2610-2617 (proposed Count XI); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 (proposed Count XII); and the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, et seq. (proposed Count XIII) (Dkt. No. 60-1 at 2-5, ¶¶ 42-63). Just as Plaintiffs did not seek to add to or amend the factual allegations in their initial verified complaint by their first amendment to the complaint, they do not seek to do so in support of the claims they seek to add by their proposed second amendment (*id.*).

III. DISCUSSION

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . The default rule mandates that leave to amend is to be "freely given when justice so requires" . . . unless the amendment

---

[2] There is no Count VII in either the initial verified complaint (Dkt. No. 1-1 at 16) or the amendment to complaint (Dkt. No. 1-2).

3

"would be futile, or reward, *inter alia,* undue or intended delay." As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. . . . Once a scheduling order is in place [if leave to amend is sought after the cut-off date established in the order], the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b).

*Steir v. Girl Scouts of the USA,* 383 F.3d 7, 11-12 (2004) (internal citations omitted).

"[T]he 'spirit of the rule' dictates a preference for decisions 'on the merits, not because of missteps by counsel in pleading.'" *J.S. McCarthy Co. v. Braus Diecutting & Converting*, 226 F.R.D. 14, 17 (D. Me. 2005) (quoting *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 3 (D. Me. 1998) (quoting *Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 34 (D. Mass. 1983))); *see also Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25-25 (1st Cir. 2007) (Rule 15(a) embodies a liberal standard for judging a motion for leave to file an amended complaint). "In considering a motion for leave to amend . . . the trial court must first consider whether the proposed new claims are futile[.] . . . If the claims are not futile, then the trial court must consider whether, given the timing of the motion for leave to amend, such prejudice to the defendant would arise from granting the motion that the motion should be denied on that ground." *Smith v. Mitre Corp.*, 949 F. Supp. 943, 945 (D. Mass. 1997). "In determining whether the plaintiffs unduly delayed in filing their motion to amend, the focus . . . is on whether allowing the amendment would unfairly prejudice the defendants." *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 155-56 (D.R.I. 2004); *Mitre Corp.*, 949 F. Supp. at 945. "Amendment of pleadings is largely a matter within the discretion of the district court." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010).

<u>Futility</u>

"If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal

4

criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *see Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."). Thus, in this context, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("a proposed amendment is futile only if it could not withstand a 12(b)(6) motion to dismiss"). Thus, where the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard.

Defendant's opposition to Plaintiffs' Motion is based on the single contention that adding the proposed additional claims would be futile because Plaintiffs have not alleged (and cannot allege) that they were signatories to the promissory note which required repayment of the loan secured by the Second Mortgage. According to Defendant, Plaintiffs, therefore, are not "borrowers" and lack standing to assert any of the three causes of action identified in the newly proposed amendments to the verified complaint (Dkt. No. 64). Plaintiffs do not dispute that their status as borrowers is the critical question. Rather, they contend that there is persuasive authority for treating them as borrowers because they are successor owners of the property subject to the Second Mortgage (Dkt. No. 72). In the court's view, Defendant has the better of the arguments.

1. RESPA

In Count XI, Plaintiffs propose to add a claim under RESPA based on Defendant's lack of response to their requests for information about the failure to credit payments to the Second

Mortgage account (Dkt. No. 60-1 at 1-2, ¶¶ 45-51). RESPA and its implementing regulations "describe the duties owed by mortgage loan servicers to 'borrowers.'" *Sharp v. Deutsche Bank Nat. Trust Co.*, Civil No. 14-CV-369-LM, 2015 WL 4771291, at *4 (D.N.H. Aug. 11, 2015) (citing 12 C.F.R. §§ 1024.35(e)(1)(i) & 1024.36(d)(1) and 12 U.S.C. §§ 2605(e)(1)(A) & (2)). Neither the statute nor the regulations define the term "borrower." There is, however, "ample judicial authority on that point," *Sharp*, 2015 WL 4771291, at *4, and that judicial authority, almost without exception, holds that individuals – such as Plaintiffs in this case – who did not sign the promissory note securing the mortgage and have not assumed the mortgage are not "borrowers" within the meaning of the statute. Numerous courts have held that such individuals "lack[] standing to assert a RESPA claim." *Nelson v. Nationstar Mortg. LLC*, No. 7:16-CV-00307-BR, 2017 WL 1167230, at *3 (E.D. N.C. Mar. 28, 2017) (collecting cases); *see also Sharp*, 2015 WL 4771291, at * 5-6 (denying the plaintiff's motion for leave to amend his complaint to add a RESPA claim on the ground of futility because, although the plaintiff was a signatory on the mortgage, he was not a signatory on the promissory note and therefore not a borrower within the meaning of the statute).

In support of their quest to add a RESPA claim to the verified complaint, Plaintiffs rely on *Frank v. J.P. Morgan Chase Bank, N.A.*, Case No. 15-cv-05811-LB, 2016 WL 30555901 (N.D. Cal. May 31, 2016) and *Washington v. Green Tree Servicing, LLC*, Case No. 1:15-cv-354, 2017 WL 1857258 (S.D. Ohio May 5, 2017) (Report and Recommendation), *adopted*, 2017 WL 2599252 (S.D. Ohio June 15, 2017). In *Frank*, the plaintiff's husband had signed the promissory note; the plaintiff had not done so. The plaintiff and her husband had signed the mortgage, which required her to grant and convey her interest in the property in certain circumstances. 2016 WL 30555901, at *1. After her husband's death, Chase refused to communicate with the

plaintiff about the loan because she was not the borrower. The court declined to dismiss the plaintiff's RESPA claims because she was referred to as a "Borrower" in the mortgage and, under California law, was obligated to make loan payments on the mortgage, which was a community debt. *Id.* at *5.

The circumstances and reasoning in *Washington* are similar. The plaintiff and her mother owned real estate as tenants in common with right of survivorship. Plaintiff's mother signed a note secured by a mortgage on the property; the plaintiff signed only the mortgage. 2017 WL 1857258, at *1. After her mother's death, plaintiff continued to make loan payments for many years. When she missed payments, the loan servicing company commenced foreclosure proceedings. In the ensuing months, plaintiff had numerous communications with the defendant, including communications in which the defendant told the plaintiff she was eligible for a loan modification. The defendant then determined that the plaintiff was not eligible for a loan modification because she had not assumed the loan. The parties scheduled a loan closing which the plaintiff was unable to attend because of a family member's death. The defendant refused to reschedule the loan closing and proceeded to foreclose on the house. *Id.*, at *2. The court denied the defendant loan servicer's motion for summary judgment for two reasons. First, the defendant "accepted mortgage payments from plaintiff for seven years and treated plaintiff as if she was a borrower standing in the shoes of her mother." *Id.*, at *5. Second, the court relied on recent amendments to Regulation X promulgated by the Consumer Financial Protection Bureau, which will become effective on April 19, 2018, and which define "borrower" for purposes of RESPA to include "'[a] confirmed successor in interest.'" A successor in interest, in turn, is defined as "'a person to whom an ownership interest in a property securing a mortgage loan . . . is transferred from a borrower, provided that the transfer is . . . [a] transfer by devise, descent, or operation of

law on the death of a joint tenant or tenant by the entirety.'" *Id.*, at *5 (quoting Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 FR 72160, 72370 (Oct. 19, 2016)) ("2013 Mortgage Rule Amendments").

For two reasons, Plaintiffs' reliance on these cases is not persuasive. First, unlike the plaintiffs in *Frank* and *Washington*, it is undisputed that Plaintiffs in this case did not sign the mortgage *or* the note, and thus had no obligations under either document. *Contrast Washington*, 2017 WL 1857258, at *5 ("Plaintiff is named as a 'borrower' under the mortgage and, like the widow in *Frank*, was obligated under the mortgage to comply with the non-payment covenants such as providing property insurance, occupancy, preservation, and other covenants."); *Frank*, 2016 WL 30555901, at *4 (other cases in which RESPA claims were dismissed for lack of standing are distinguishable because in those cases "the plaintiffs did not sign any of the mortgage documents, and thus were not obligated whatsoever").

This leaves the *Washington* court's reliance on the Amendments to the 2013 Mortgage Rules which, based on the allegations in the verified complaint, might enable Plaintiffs to state a claim under RESPA (and TILA and the MCCCDA). In the First Circuit, however, "in the absence of an express grant of statutory authority to promulgate retroactive regulations, the retroactive application of an agency rule is disfavored." *Pine Tree Med. Assocs. v. Sec. of Health and Human Servs.*, 127 F.3d 118, 121 (1st Cir. 1997) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998)). The Consumer Financial Protection Board announced an effective date 18 months after publication for its new rules governing a mortgagor's and loan servicer's obligations to a successor in interest under RESPA and TILA – an effective date that was considerably later than effective dates for other portions of the 2013 Mortgage Rule

8

Amendments – acknowledging the volume of commentary on these particular regulatory changes and the industry's need to adopt conforming policies and procedures. 2013 Mortgage Rule Amendments, 81 FR 72160, 72349-72350. The retroactive application of these definitional revisions would have the effect of "'increas[ing] a party's liability for past conduct.'" *Arevalo v. Ashcroft*, 344 F.3d 1, 10-11 (1st Cir. 2003) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)) (addressing the retroactive application of amended statutory provisions). "If such ramifications loom, the default rule is that the statute [or regulation] should not be construed to regulate the past conduct." *Id.* (citing *Hughes Aircraft Co. v. United States ex re. Schumer*, 520 U.S. 939, 946 (1997); *United States v. Puerto Rico*, 287 F.3d 212, 217 (1st Cir. 2002)). Plaintiff has pointed to no authority for avoiding the application of the default rule here, which cautions against retroactive application of the broader definition of the term "borrower" in Regulation X (and Z).

For the foregoing reasons, the court concludes that Plaintiffs' attempt to plead claims under RESPA would be futile.

### 2. TILA and MCCCDA

Plaintiffs' proposed Count XII under TILA and their proposed Count XIII under the MCCCDA assert that Defendant violated these statutes by accepting Plaintiffs' payments on the Second Mortgage and failing to credit those payments to the Second Mortgage account (Dkt. No. 60-1 at 4-5, ¶¶ 55-58; 61-62). "In Massachusetts, the MCCCDA – and not the TILA – determines the rights and liabilities arising from 'consumer credit transactions.'" *In re Smith-Pena*, 484 B.R. 512, 517 (Bankr. D. Mass. 2013). "[B]ecause the Massachusetts legislature closely modeled the MCCCDA after the TILA, the former is construed in accordance with the latter." *Id.* (citing *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir.

2007); *Desrosiers v. Transamerica Fin. Corp.*, 212 B.R. 716, 722 n.6 (Bankr. D. Mass. 1997)).

With certain exceptions, the TILA and the MCCCDA require a loan servicer to credit a "consumer's" periodic payment to the consumer's loan account as of the date of receipt. 12 C.F.R. § 1026.36(c)(1)(i); 209 C.M.R. 32.26 (practices prohibited under 12 C.F.R. § 1026.36 are prohibited under 209 C.M.R. 32.26).

> Although a uniform term is lacking, it is apparent that the MCCCDA [and the TILA] as a whole govern[] the relationship between creditors and persons who will become responsible to perform some action as a result of the transaction, and that the statute[s] [are] chiefly concerned with ensuring that the 'borrower,' 'consumer,' 'customer,' 'debtor,' or 'obligor' is informed of the terms under which credit is extended.

*In re Smith-Pena*, 484 B.R. at 523. Just as the definition of the term "borrower" was amended effective April 19, 2018 for purposes of RESPA, the term "consumer" was amended effective April 19, 2018 for purposes of TILA. 12 C.F.R. §1026.2(a)(11); 27(i) & Effective Date Notes (citing 81 FR 72388). Just as the revised definition of the term "borrower" should not be applied retroactively under RESPA, the revised definition of the term "consumer" under the TILA and the MCCCDA should not be applied retroactively to grant Plaintiffs rights as "consumers" that they did not have at the relevant time, and to hold Defendant liable for violating those rights. *See Pine Tree Med. Assocs.*, 127 F.3d at 121.

For these reasons, the court concludes that Plaintiffs' attempt to plead claims under the TILA and the MCCCDA would be futile.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Further Amend the Verified Complaint is DENIED. The court will establish a briefing schedule for the filing of dispositive motions and oppositions thereto in a separate docket entry.

It is so ordered.

Dated: April 6, 2018                              /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  U.S. MAGISTRATE JUDGE